WILLIAM D. BAILEY, RESPONDENT, *v.* THE ROME, WATER-TOWN AND OGDENSBURGH RAILROAD COMPANY, APPELLANT.

*Defective brake-rod on a railroad — the opinion of a witness in respect to what would put it out of order is improper.*

In an action brought to recover damages for injuries sustained by a brakeman, by reason of the giving away of a brake-rod which he was operating on one of the defendant's cars, it appeared that the brake had a rod which went down through the car, in the bottom of which was a stirrup of flat iron, through which the brake went into a hole. In the rod under the stirrup was a hole in which was placed a pin or ring to hold the rod from lifting out of the stirrup iron. The accident was occasioned by the brake-rod rising up by reason of the pin having come out of its place.

The plaintiff was examined as a witness and was asked the following question: "If the key or ring was in the brake-staff at the time you commenced using and operating it, could you have pulled it out, or caused it to fall out, with the force that you applied?" this was objected to; the objection was overruled and the witness allowed to answer. He was also asked: "Assuming that the key, or ring or pin, made of iron, as you have described in your direct-examination, was properly in the brake-standard when the train left Norwood, and that no accident occurred to the train on the trip from Norwood, and the brake was not used during that time, in your judgment could the ring or pin have worked out or fallen out on the trip?" This question the witness, after objection, was allowed to answer.

*Held,* that none of the subjects presented by the questions embraced questions of science or skill, and that the subject of inquiry was not such as to require or authorize the opinions of the witnesses; which it was error to receive in this case.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the county of Oneida on the 26th day of January,

1889; and also from an order denying a motion for a new trial made upon the minutes of the court, entered in said clerk's office on February 14, 1889.

The action was tried at a Circuit Court, held in and for the county of Oneida, at which a verdict was rendered in favor of the plaintiff for the sum of $8,000.

The action was brought to recover damages for the alleged negligence of the defendant resulting in an injury to the plaintiff, who was a brakeman in its employ at the time of the accident.

On the 3d day of August, 1886, the plaintiff was employed by the defendant in the capacity of brakeman. While in the discharge of his duties as brakeman on train No. 60, at De Kalb, he received the injuries to recover the damages resulting from which this action was brought.

In describing the manner in which he received the injuries, he testified as follows, viz.: "It was a brake eighteen inches high, perhaps, from the floor of the car up to the top of the car brake where you take hold. I set it as tight as I could get it with the muscles of my arms. I gave the wheel but one or two turns, probably a couple of twists, then I swayed on the brake with the rest of my body. Immediately, when I did that, the brake came up with me perfectly easy and I tipped off, head first, down between the cars. The brake-staff tipped over and I went under the train, head first. I pitched right off at the side, right at the end of the two cars at the side, and struck the platform of the station that runs along side the cars, and I struck that with my leg and rolled back under the wheels, and I was dragged, perhaps, one hundred or one hundred and fifty feet. My coat was pitched over my head so I could not see anything. I didn't know what minute they might cut my head off. The first thing I knew somebody grabbed hold of me and pulled me out. * * * This brake has a rod which goes down through the car, and in the bottom of the car is a stirrup of flat iron through which the brake goes in a hole. In the rod under the stirrup is a hole in which goes a pin or ring to hold rod from lifting out of that stirrup iron. On top of rod is a wheel, with spokes in, and a nut on it. The wheel is for the purpose of taking hold to set the brake. From the bottom of the car to the stirrup is a space for the chain attached to the brake which works on the rod. The chain is inside of the stirrup.

They have two different kinds of pins; one is the size of a lead pencil, split in the end, drawn through the hole and bent back so it can't pull out; both ends are bent back. The other kind is a round ring of iron, about the size of a lead pencil, which is bent round and lapped like the weld of a piece of iron. When I took hold of brake there was nothing, from where I stood, to indicate there was anything wrong about it. It appeared all right as I set it until I swayed on it. I could not see the bottom of the brake-staff from where I stood. That is under the car. There is no difficulty in seeing it from the ground if one is examining the brakes. The brake-rod was about an inch and a quarter at the lower end, and the hole through which the ring or pin goes is about the size of a lead pencil, so that the ring in there twists."

Plaintiff was asked the following question, viz. : " If the key or ring was in the brake-staff at the time you commenced using and operating it, could you have pulled it out, or caused it to fall out, with the force that you applied." To this question the counsel for the defendant objected that " this is not a question for an expert." The objection was overruled and an exception taken. The witness answered, " It could not."

When the witness Sweeney was upon the stand he was asked, viz. : " Assuming that such a pin or key as you have described was in the brake at the time it was used, in your judgment could any force that a brakeman could have applied in using a brake have caused that key or pin to come out or fall out ? " Defendant's counsel objected to the question as " incompetent, immaterial, and not a question for an expert, and he cannot possibly know the force which any brakeman could use." Thereupon the court made a ruling sustaining the objection. Some discussion took place, and the court intimated its intention to allow the question, and the defendant's counsel further stated as a ground of objection : " That it was not a question for an expert, and not embracing the facts of the case, and a supposition." Thereupon the court overruled the objections, and the defendant's counsel took an exception, and the following question was put, to wit : " Q. Assuming that a pin, key or ring, such as you have described, was in the brake-standard at the time it was operated or commenced to be operated by Bailey, in your judgment, could he by the use of such brake, in braking,

have broken, or pulled out, or caused to come out, the ring or pin, without injuring the brake-standard or displacing the stirrup ? " The objections were again repeated and overruled and an exception taken, and the witness answered, viz.: "He could not;" thereupon another question was propounded, viz.: "Q. In your judgment could he by any use of the brake with his hands have broken or pulled that pin out ?" This was objected to and an exception taken, and the witness answered, "No sir."

The plaintiff was recalled as a witness and the following question propounded to him : "Q. Assuming that the key, or ring or pin, made of iron, as you have described in your direct-examination, was properly in the brake-standard when the train left Norwood, and that no accident occurred to the train on the trip from Norwood, and the brake was not used during that time, in your judgment could the ring or pin have 'worked out or fallen out on the trip ?" This question was objected to by the defendant on the ground that it was "incompetent and immaterial. Not a question for an expert. No proof in the case as to the character of the pin which was in this brake-standard." The objections were overruled and an exception taken, and the witness answered, "No sir ; it could not." A motion was made for a nonsuit and denied and an exception taken.

*A. M. Beardsley*, for the appellant.

*William E. Scripture* and *Oswald P. Backus*, for the respondent.

HARDIN, P. J. :

When this case was before us on a former appeal (49 Hun, 377), we stated the principles of law applicable to the case, with numerous citations of authority upholding them, and reached the conclusion that "the plaintiff's evidence was insufficient to justify the submission to the jury of the question of the defendant's negligence, and that the court erred in refusing to grant the defendant's motion for a nonsuit." We adhere to the principles of law found in the opinion of the court delivered on that occasion. We think the learned trial judge fell into an error in receiving the testimony of witnesses upon the subject of the capacity of a brakeman to displace the rod

in case the pin had remained therein, and also upon the subject of whether or not a "pin or ring could be lost out on the road between Norwood and De Kalb in the absence of the use of the brake and in the absence of any accident." We think neither of the subjects of the opinions received embrace questions of science or skill. (*Teall* v. *Barton*, 40 Barb., 137.)

We think the language of MILLER, J., in *Hart* v. *Hudson River Railroad Company* (84 N. Y., 60), is applicable to the rulings made. He there says: "It was entirely a matter of opinion, not properly within the rule which allows the testimony of experts, and, in regard to which, one individual could form a judgment as well as another, both having equal knowledge of the circumstances. It did not relate to anything connected with the safety or the strength of the construction, but to a question of fact, which properly belonged to the jury to pass upon, and which could not be disposed of upon the opinions of witnesses."

In *Ferguson* v. *Hubbell* (97 N. Y., 513) the subject of the opinion of witnesses is considered, and it is there said: "Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence it is not needed that the jurors should be able to see the facts as they appear to eye-witnesses, or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them and comprehend them sufficiently for the ordinary administration of justice." We think the subjects of inquiry were not such as to require or authorize the opinion of the witnesses, and that it was error to receive such opinions.

In *Vosburgh* v. *Lake Shore and Michigan Southern Railroad Company* (14 Week. Dig., 514), where the construction of the Ashtabula bridge was the subject of inquiry, I prepared an opinion which upheld a ruling allowing an engineer to state that the bridge fell because of "the bad design of the work as built, and also the

defective manner of constructing the work." That case was afterwards affirmed by the Court of Appeals (94 N. Y., 374).

We think the case is distinguishable from the one before us, and nothing is stated in either the opinion delivered in this court or in the Court of Appeals tending to support the rulings in the case in hand.

In *Schwander* v. *Birge* (46 Hun, 66) the question was whether the means of egress from a building " were reasonably sufficient and all that due care required of the defendant to provide for his employees," and it was held that the opinion of witnesses upon that subject could not properly be received. The question was one of fact for the jury, and the decision is put upon the authority of *Ferguson* v. *Hubbell* (*supra*). The evidence upon the subject of the alleged negligence of the defendant is so meagre that we do not feel warranted in saying that the evidence which was received of the opinions of witnesses was not prejudicial to the defendant.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.